SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

S &ₗₗₗₛP NATIONAL CORPORATION,
Smith-Palmer Machine Corporation,
Southwest International Corporation,
David M. Milton and Ralph E. Still, De-
fendants.

No. 66 Civ. 512.

United States District Court
S. D. New York.

April 16, 1966.

Llewellyn P. Young, Richard V. Bandler, New York City, for Securities and Exchange Commission.

Shea, Gallop, Climenko & Gould, New York City, Martin I. Shelton, Milton S. Gould, New York City, of counsel, for S & P National Corp. and others.

## MEMORANDUM.

THOMAS F. MURPHY, District Judge.

In this action commenced on February 21, 1966, the Securities and Exchange Commission seeks by notice of motion dated March 9, 1966, returnable March 22nd and adjourned by consent to April 12, 1966, a preliminary injunction enjoining the corporate defendants S & P National Corporation, Smith-Palmer Machine Corporation and Southwest International Corporation, their officers and agents from (a) offering for sale or selling by the use of the mails and instrumentalities of interstate commerce any securities; (b) purchasing, redeeming, retiring or otherwise acquiring in the same manner any securities; (c) engaging in business in interstate commerce and from (d) controlling a company engaged in business in interstate commerce.

The Commission's grounds for such relief are: that the defendant corporations were and are investment companies within the meaning of § 3(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq., and that none of them has registered with the Securities and Exchange Commission in accordance with the provisions of § 8 of that Act, 15 U.S.C. § 80a–8, and; that each of them has in the past engaged and consummated certain of the aforementioned acts sought to be restrained in violation of § 7 of the Investment Company Act of 1940, 15 U.S.C. § 80a–7.

In addition to claims of alleged violations of the Investment Company Act of 1940 it is also claimed that the directors of the defendant S & P National Corporation, which controls the other two corporate defendants, have abandoned or resigned their duties and offices and have left the management and affairs of such corporate defendants in the hands or under the control of persons whose past conduct in respect to such corporate defendants evidences knowing, wilful disregard and contempt for the requirements of law applicable to such defendants, particularly § 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(d), and such conduct has caused the dissipation of assets of such corporate defendants and has prejudiced the interests of the public shareholders of the defendant S & P National Corporation.

The Commission moves also for the appointment of a receiver or trustee in order to preserve the assets of the corporate defendants and to render effective the relief prayed for.

From the affidavits submitted there is no dispute; that the defendant S & P is publicly held and has been subject to the reporting requirements of § 15(d) of the 1934 Act since 1946; that defendant Smith-Palmer has been a wholly

owned subsidiary of S & P since 1953; that Southwest has been a wholly owned subsidiary of Smith-Palmer since 1956. It is also undisputed that none of these corporations registered as an investment company under that Act.

It is evident that between 1958 through 1962 Southwest has been engaged in the business of owning securities "having a value exceeding 40 per centum of the value of such issuers' total assets (exclusive of government securities and cash items) and on a non-consolidated basis." In 1963 that percentage fell to 36.2% and in 1964 to 39.8%. We are satisfied, however, that these lower percentages were caused principally by the lower market values of Southwest's principal investment holding, approximately 500,000 shares of Great American Industries, Inc. Those shares, however, in the last month and when the stock was suspended from trading early this month were selling at approximately 12, an increase of almost 10 points, to bring the percentage well over 75% of the value of Southwest's total assets. The price was slightly higher at the close of the market on April 15, 1966, after the suspension was lifted.

It is alleged, in opposition, that from late in 1956 through May, 1963, Southwest was primarily engaged in the real estate business through its ownership of Kraftville Corporation and Wellit Corporation and thus did not come, during that period of time, within the definition of an investment company, but after September, 1957, Kraftville was no longer a wholly owned subsidiary of Southwest. In May of 1963 the real estate property owned by Wellit was sold for $200,000, which certainly indicates that after September, 1957, Wellit's real estate operations represented but a small part of Southwest's total assets of nearly $2,500,000.

It seems clear, therefore, that these three corporations were investment companies who did not register with the Commission.

It has not been contested by the defendants that the following transactions were engaged in, which if the corporate defendants are investment companies, as we find they are, clearly indicate that § 7(a) (1) and (2) of the Investment Company Act of 1940 have been violated:

(1) A sale by Southwest in 1958 of 85,000 shares of Sterling Precision Corporation common stock on the American Stock Exchange; (2) further sales of more than 85,000 shares of Sterling Precision Corporation stock were made through brokers from 1958 and during 1960 and 1961 through the use of the mails; (3) there was a sale of promissory notes (securities as defined by § 2 (a) (35) of the Investment Company Act of 1940) as part of a transaction which took place in Nassau, Bahamas, and thus involved interstate commerce; (4) in December, 1962, Southwest received approximately $190,000 as its interest in the sale of the shares of Balcrank, Inc. The proceeds were utilized in payment of Southwest's debt and thus to retire an evidence of indebtedness (a security as defined by §. 2(a) (35)). The mails were used in connection with the retirement of the debt.

In violation of Subdivision (4) (5) of § 7(a) of the 1940 Act, Southwest has engaged in business in interstate commerce as defined by § 2(a) (18) as follows: (1) in 1960 and 1962 Southwest directly engaged in banking transactions in Chicago in connection with the renewal of certain loans secured by the shares of Balcrank, Inc.; (2) until 1963, Wellit Corporation, a wholly owned subsidiary of Southwest owned real estate in Missouri. Kraftville Corporation, a majority owned subsidiary of Southwest continues to own and lease real estate in New York and to own and lease parts of aircraft held for salvage in Florida. Since Mr. Still functions on behalf of Southwest and its subsidiaries, Southwest is engaged in business in interstate commerce through controlled companies. S & P and Smith-Palmer are also in violation of § 7(a) (3) through their control of Southwest.

The more difficult issue on this motion is whether or not the Commission has made out a strong *prima facie* case that the individual defendant, David M. Milton, controlled and was a director of S & P during the period of time 1952 to 1964 during which time it filed, pursuant to § 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(d) the required Form 10–K. If he was, such reports were false and misleading in failing to disclose his control and the identity of the directors of S & P.

Defendant Milton, by affidavit, states that he is not a director of S & P nor has he been or performed the functions of a director since 1958, nor has he exercised any influence over the management or policies of S & P, Southwest or Smith-Palmer since he resigned as a director of Southwest in December, 1958. He further states that he does not own directly or indirectly, beneficially or otherwise, a single share of stock of S & P. He admits that until February 1, 1966, he was Chairman of the Board and Chief Executive Officer of The Equity Corporation and a director or officer in a number of other major corporations in which Equity had a substantial stock interest. On February 1, 1966, he resigned over 40 directorships in The Equity system. Although not certain, he fixed the date of his resignation from Southwest at December 15, 1958.

The Commission's evidence on this issue, Milton's "control," although far from conclusive, is sufficient, we feel, to at least create a strong *prima facie* case on its behalf.

In each Form 10–K filed by S & P for the years 1957 through 1964 it was reported that its directors were Fred Aberlin, John A. Bitterli and Paul Taylor.

It is undisputed that there has been no stockholders' meeting since 1955.* It is undisputed that some time prior to 1962 Aberlin, Bitterli and Taylor resigned their offices as directors, to which they were elected in 1955. It is argued

in opposition that their resignations have not been accepted. Defendant Ralph E. Still in his affidavit states that each of said persons (Aberlin, Bitterli and Taylor) submitted a resignation to S & P prior to 1962 but no action has been taken thereon and no successors have been appointed for any of them. He states that in 1962 there was a special meeting of the Board of Directors of S & P, which Bitterli and Aberlin attended also; that Taylor was notified of the meeting and wrote that he could not attend but he did not state in his letter that he was no longer a director and; that at the 1962 meeting Bitterli and Aberlin advised him that they would continue to serve as directors until replaced.

When Still was examined by the Commission under oath in 1965 he stated that he had not seen Taylor in five years and as to Aberlin and Bitterli he testified:

"Q. Now, what role, if any, do they play in S & P?

"A. Right at the moment they play nothing.

"Q. When was the last time they were active in the activity of S & P?

"A. I think directors meeting, it was. only this—see, S & P, since '56 has been dormant. It is only a holding company, in effect."

However, Aberlin and Bitterli and Taylor testified that they each have resigned. One thing that is crystal clear, whether they have resigned or not, is that they certainly have abandoned their duties.

On the question of Milton's "control," there is the testimony of Aberlin and. Still.

Aberlin testified before the Commission under oath in March, 1965, "While I have never known who controlled the affairs of the company it is my understanding that Mr. Milton directed the company through and in conjunction with Mr. Still."

* A meeting was held in Dover, Delaware, on April 12, 1966, the day this motion was argued.

Still testified under oath (1964–1965) that he first met Milton in 1932 and has been associated with him since that time. Still has been associated with S & P since 1951 and its subsidiaries Smith-Palmer, Southwest, Kraftville and Wellit as an officer or director. He testified that over a period of many years he did receive "suggestions" from Milton or "recommendations" from Milton but not orders, although he could think of no time at which he did not follow the "suggestions" or "recommendations."

Still testified that in 1956 to 1957 when Milton was a director of Southwest, Milton recommended transactions and that he also made "suggestions" and "recommendations" prior thereto, i. e., from 1951 to 1956. When asked whether Milton gave any suggestions with respect to S & P after 1958 Mr. Still responded: "If he did it would come through Palmer Searles," but denied that the activities of S & P were controlled by Milton from 1951 to 1960. When asked who did control them he responded, "Well, control could be—I was the control could be—you didn't have to be the owner of one share of stock, control was the one who directed the affairs of the company."

"Q. Who directed the affairs?

"A. All the directions came out of Palmer Searles, sir, and a good part from David A. Milton. I know Mount Vernon did, or from Utermohlen through Mr. Raymond Naughton, Wallace Collins and William Metz.

"Q. What I mean to ask is did the situation change after 1959?

"A. No, I still go to Palmer Searles with everything that has to do with the S & P group."

Palmer, Searles, Delaney, Shaw & Pomeroy were the lawyers for S & P from 1956 until very recently and two very interesting exhibits in the case are letters in 1959 from this law firm to Still relating to S & P's 10–K reports. Copies of each were sent to Milton according to the legend on the bottom of each. Others testified they knew Mr.

Still to be the personal financial man, secretary and private accountant for Mr. Milton over a period of many years. An accountant who worked on the books of many of the related companies of S & P testified that he always dealt with Mr. Still and Mr. Milton.

Another man testified before the Commission that he was the Vice President of Equity from 1959 to 1962 when he was elected President and it was his impression that Mr. Milton was the dominant personality in S & P for a period of time. That impression was based on "mainly conversations with people and knowing his department had been working on many proposals not involving any Equity company but proposals involving S & P National."

In addition to such testimony the Commission has submitted a number of bank credit memoranda relating to discussions between its officers and Milton and Still concerning the business of S & P, Southwest and other companies that S & P had an interest in. From these memoranda it would appear that long before Milton became a director in Southwest in the early 1950's he guaranteed numerous substantial loans to S & P and its companies and gave the impression to the bank officers that he was the "behind the scenes guiding light of S & P," and that the banks dealing with S & P relied on Milton's backing.

■ Against all of this, cumulative as it is and far from compelling, is the denial of Milton in the following words: "I am not a director of S & P nor have I in the time charged, i. e., since 1958, performed the functions of a director of S & P. I have not exercised any influence over the management or the policies of S & P or Southwest or Smith-Palmer since I resigned as a director of Southwest in December of 1958." He has not contested any of the specific matters above enumerated. It is argued, however, that the Commission has primary jurisdiction under § 2(a) (9) of the 1940 Act of the issue of control and we should yield to it for a preliminary determination. This argument has been

rejected by the Commission itself in Matter of Fundamental Investors, Inc. (Investment Company Release No. 3596) and accordingly we reject it.

The Commission in addition to seeking a temporary injunction prays that this court appoint a trustee for the corporate defendants herein pursuant to § 42(e) of the Investment Company Act, 15 U.S.C. § 80a–41(e) and our inherent equity power on the ground that these unregistered investment companies participated in the aforementioned transactions and that S & P has been abandoned by its board of directors and filed false reports.

As we noted above, on the very day that this motion was argued, April 12th, there was allegedly a stockholders' meeting of S & P in Dover, Delaware, and a board of directors elected who in turn elected officers. It is argued that that action, the first stockholders' meeting in eleven years, should persuade us that the drastic remedy of appointing a trustee is unnecessary and uncalled for. We are not so persuaded. The inference that we draw from such last minute tactic is that it was done solely for the purpose of avoiding a trustee. It must be obvious, too, that the directors were elected by those in control of the corporation's stock without any disclosure as to whether there has been a change in control since the commission of the above enumerated acts in violation of § 7(a).

We hold that such recent revival of a board of directors is not sufficient to defeat our statutory or equity power. See United States v. Parke Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960).

Accordingly, we hereby appoint Leslie Kirsch, Esq., 405 Lexington Avenue, New York City, as trustee and grant the temporary injunction prayed for.

It is, therefore, ordered that the defendants S & P National Corporation, Smith-Palmer Machine Corporation, Southwest International Corporation, their officers, agents, servants, employees, and attorneys, acting in behalf of said corporations, and all persons in active concert and participation with them are enjoined pending the final hearing and determination of this action, from directly or indirectly:

(a) offering for sale, selling, or delivering after sale, by the use of the mails or a means or instrumentality of interstate commerce, a security or securities or an interest or interests in securities;

(b) purchasing, redeeming, retiring, or otherwise acquiring or attempting to acquire, by the use of the mails or a means or instrumentality of interstate commerce, a security or securities or an interest or interests in securities;

(c) engaging in business in interstate commerce; or

(d) controlling a company engaged in business in interstate commerce;

(e) disposing of any of the assets of said defendants or otherwise engaging in business or other transactions.

It is ordered further that the defendant S & P National Corporation, its officers, agents, servants, employees, and attorneys, and all persons in active concert and participation with them, are enjoined pending the final hearing and determination of this action, from filing with plaintiff Securities and Exchange Commission any document, report, or information, which is insufficient, false, or misleading, in that it fails to disclose the identities of all parents, controlling persons and directors of defendant S & P National Corporation, or discloses such identities in such a manner as to be insufficient, false or misleading.

It is ordered further that Leslie Kirsch is appointed receiver of the books, records, and assets, of defendants S & P National Corporation, Smith-Palmer Machine Corporation, and Southwest International Corporation, pending the final hearing and determination of this action, in order to preserve the assets of said corporate defendants and to render effective the relief prayed for herein, and that said trustee is directed and em-

powered: (a) to take possession and maintain the books, records, and assets of said defendants, wherever located; (b) to ascertain the true state of affairs of said defendants and report thereon to this court and to the shareholders of defendant S & P National Corporation; (c) to determine what persons are and have been directors and parents and controlling persons of defendant S & P National Corporation; (d) to cause said defendants to comply with the applicable provisions of the Investment Company Act of 1940 and the Securities Exchange Act of 1934.

This is an order. No settlement is necessary.